JOHN G. CONNOLLY, ESQ. [SBN 115550]
ALAN H. FINKEL, ESQ. [SBN 93763]
CONNOLLY FINKEL & GOSSELIN LLP
15760 VENTURA BOULEVARD, 18TH FLOOR
ENCINO, CA 91436

TELEPHONE: (213) 452-6500
EMAIL:    JCONNOLLY@CFGLLP.COM
          AFINKEL@CFGLLP.COM

Attorney for Plaintiff
TOMS Shoes, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TOMS SHOES, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>G.B. BEACH CONCEPTS, INC., a Florida corporation; JERRY FOERCH, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS** |

Plaintiff TOMS Shoes, LLC, a Delaware limited liability company ("Plaintiff" or "TOMS"), brings this action against Defendants G.B. BEACH CONCEPTS, INC., A Florida corporation; JERRY FOERSCH, an individual, and Does 1-10 (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§1114 and 1125; unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a); unfair and deceptive business practices under Cal. Bus. & Prof.

Code §§ 17200, *et seq.*; unfair competition under California common law; and tortious interference with contractual relations.   These claims arise from Defendants' misappropriation of TOMS' trademarks by selling used, dirty, poor-quality, potentially counterfeit, and otherwise non-genuine products bearing TOMS' trademarks on the Internet despite advertising these products as new and genuine TOMS products.   In support of its Complaint, TOMS alleges as follows:

<u>PARTIES</u>

1.    TOMS is a limited liability company, organized under the laws of Delaware, with its principal place of business located in Los Angeles, California.

2.    Defendant G.B. Beach Concepts, Inc., ("Beach Concepts") is a corporation, organized under the laws of Florida, with its principal place of business located at 2611 NE 11th Ct., Ft. Lauderdale, FL, 33304.  According to records of the Florida Secretary of State, Beach Concept's principal address, mailing address, and registered agent address is  2611 NE 11th Ct., Ft. Lauderdale, Fl, 33304.

3.    Defendant Jerry Foerch ("Foerch") is a natural person who, according to records of the Florida Secretary of State, is the President and registered agent of G.B. Beach Concepts, Inc.  Upon information and belief, Foerch resides at 2611 NE 11 Ct., Ft. Lauderdale, FL, 33304.

4.    Upon information and belief, Defendants operate a third-party storefront on www.amazon.com ("Amazon") that is currently called "Beach feet," with a Merchant ID number of : A368P1XA7FWOMA.[1]  The "Beach feet" storefront can be accessed at https://www.amazon.com/s?me=A368P1XA7FWOMA&marketplaceID=ATVPDKIKX0DER.

5.    Defendants are acting in concert as part of a coordinated scheme to sell products bearing TOMS' trademarks without authorization through the "Beach Feet" Amazon storefront (the "Unauthorized Storefront").

---

[1] Amazon allows storefront operators to change the names of their storefronts, but every storefront on Amazon is assigned a "Merchant ID" number that does not change over time, even if the formal "name" of the storefront is changed.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

6.     The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise, of Defendants Does 1-10 ("Doe Defendants") are unknown to TOMS.  Therefore, TOMS sues these Defendants by a fictitious name. TOMS is informed and believes, and on that basis alleges, that the Doe Defendants include persons and entities assisting or acting in connection with the actions complained of herein and include persons and entities that are responsible in some manner for the acts, occurrences, and liability hereinafter alleged and referenced.  The Doe Defendants are unknown natural persons and/or corporations/business entities that unlawfully acquired, distributed, or sold products bearing TOMS' trademarks.  When the true names, involvement, and capacities of these parties are ascertained, TOMS will seek leave to amend this Complaint accordingly.

## JURISDICTION

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, 28 U.S.C. §1338, and 28 U.S.C. §1367.  Plaintiff's federal claims are predicated on 15 U.S.C. §1114 and 15 U.S.C. §1125(a) and (c), and its claims arising under the laws of the State of California are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

8.     This Court has personal jurisdiction over Defendants because they are all residents of California.

9.     Defendants continue to engage in these actions despite being put on notice of their illegal conduct and the impendency of this action.

## VENUE

10.     Venue is properly founded in this judicial district pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to the claims herein occurred within this judicial district.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

## **FACTUAL ALLEGATIONS**

### **TOMS and Its Trademarks**

11.    TOMS markets and sells high-quality footwear products, including products under the TOMS® brand name ("TOMS products").

12.    TOMS allows its products to be purchased by end-user consumers in the United States only from TOMS itself or from sellers who are expressly authorized by TOMS to sell TOMS products ("Authorized Sellers").

13.    TOMS permits Authorized Sellers to sell TOMS products in approved channels only and requires Authorized Sellers to abide by agreements, policies, and other rules that impose requirements relating to quality controls, customer service, and other sales practices (collectively, the "TOMS Rules").

14.    TOMS devotes a significant amount of time, energy, and resources toward protecting the value of its brand, products, name, and reputation.  By allowing end-user consumers to purchase TOMS products only from TOMS itself or from Authorized Sellers who are required to follow the quality controls and other requirements in the TOMS Rules, TOMS ensures that consumers receive products that are subject to its quality controls and maintains the integrity and reputation of the TOMS brand.  In the highly competitive footwear market, quality and customer service are a fundamental part of a consumer's decision to purchase a product.

15.    To promote and protect the TOMS brand, TOMS has registered numerous trademarks with the United States Patent and Trademark Office, including but not limited to: TOMS® (U.S. Trademark Registration Nos. 3,353,902, 3,765,503, 3,566,093, 3,662,112, 4,410,344, 4,274,178, 4,192,925, 4,313,981, 5,276,577, 5,652,240, and 4,517,359) (collectively, the "TOMS Trademarks").

16.    The registration for each of the TOMS Trademarks is valid, subsisting, and in full force and effect.

17.    TOMS actively uses, advertises, and markets the TOMS Trademarks in commerce.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

18.    Consumers recognize the TOMS Trademarks as being associated with high-quality footwear products.

19.    Due to the quality and exclusive distribution of TOMS' products, and because TOMS is recognized as the source of high-quality products, the TOMS Trademarks have enormous value.

**Online Marketplaces and the Challenge They Present to**

**TOMS Product Quality**

20.    E-commerce retail sales have exploded over the past decade. From 2013 to the end of 2023, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 5.6% to 15.6%. *E-Commerce Retail Sales as a Percent of Total Sales*, FEDERAL RESERVE BANK OF ST. LOUIS (November 17, 2023), https://fred.stlouisfed.org/series/ECOMPCTSA.

21.    In 2022, consumers spent $1.03 trillion on e-commerce sales, a 7.7% increase from 2021. *See* Paul Conley, *US ecommerce sales and market size*, DIGITAL COMMERCE 360 (February 17, 2023), https://www.digitalcommerce360.com/article/us-ecommerce-sales/. The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2022, United States consumers spent $869.8 billion on U.S. marketplaces, including $367 billion on Amazon. *See* James Risley, *What are the top online marketplaces?*, DIGITAL COMMERCE 360 (March 1, 2023), https://www.digitalcommerce360.com/article/infographic-top-online-marketplaces/.

22.    While online marketplaces have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

23.    Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them. Instead, consumers must trust that the product they select over the Internet will be authentic and of the quality they expect and typically receive from the manufacturer.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

24.    Online marketplaces have an exceedingly low barrier to entry, do not require sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller. As a result, any person who is able to obtain a brand owner's products through unauthorized diversion can sell the products on online marketplaces while concealing that they are an unauthorized seller who is outside of, and does not abide by, the brand owner's quality controls.

25.    Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers. It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels. *See* Scott Cohn, *Greed Report: Your quest for savings could land you in the "gray market,"* CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html; Alexandra Berzon et al., *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products*, THE WALL STREET JOURNAL, Aug. 23, 2019, https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990. It is also common for unauthorized sellers to sell products that are previously used—including products retrieved from dumpsters—as "new" on online marketplaces. *See* Khadeeja Safdar et al., *You Might Be Buying Trash on Amazon—Literally*, THE WALL STREET JOURNAL, Dec. 18, 2019, https://www.wsj.com/articles/you-might-be-buying-trash-on-amazonliterally-11576599910.

26.    Third-party sellers on Amazon may also sell counterfeit items, or allow counterfeit items to enter the stream of commerce through poor controls, sourcing, and fulfillment practices.

27.    For example, the Department of Homeland Security recently published a

report noting that online marketplaces can facilitate the sale of counterfeit goods and that "American consumers shopping on e-commerce platforms and online third-party marketplaces now face a significant risk of purchasing counterfeit or pirated goods." Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, at 7. The report stated that consumers on online marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been surprised to discover that upon completion of an online sales transaction, that the order will be fulfilled by an unknown third-party seller." *Id.* at 14-15, 38. To mitigate these problems, the report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id.* at 35.

28. The business press has also reported extensively on how there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust marketplaces and think the products they are buying through the marketplaces are genuine. *See* Spencer Soper, *Amazon Gets Real About Fakes*, Bloomberg, Nov. 28, 2016, https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes; Jay Greene, *How Amazon's quest for more, cheaper products has resulted in a flea market of fakes*, THE WASHINGTON POST, Nov. 14, 2019, https://www.washingtonpost.com/technology/2019/11/14/how-amazons-quest-more-cheaper-products-has-resulted-flea-market-fakes/?arc404=true.

29. The problem of sales of counterfeit and poor-quality products on online marketplaces has become so serious that, in November 2019, the United States Senate Finance Committee issued a bipartisan report on the issue. The Committee found that the rise of e-commerce has fundamentally changed how consumers shop for products and that, as e-commerce has grown, counterfeit goods and products that "violate a right holder's trademark or copyright" are being sold at an accelerating rate on e-commerce

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

platforms.  The Committee concluded that these sales are a "significant threat" to rights holders' brands and to consumers, and that under current law it is up to rights holders to protect their intellectual property rights online.  *See* Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019, https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf.

30.    In its 2022 annual report to its shareholders, Amazon also admitted that third-party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers.  *See Amazon.com, Inc., Annual Report (Form 10-K)*, at 8 (Feb. 2, 2023), *available at* https://ir.aboutamazon.com/annual-reports-proxies-and-shareholder-letters/default.aspx.  Amazon conceded that these actions are "violating the proprietary rights of others," and warned its investors that it could be liable for "unlawful activities" of Amazon third-party sellers.

31.    Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic.  A manufacturer's inability to exercise control over the quality of its products presents serious risks to the safety of consumers.

32.    The structure, construction, and user interface of online marketplaces also pose threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

33.    When purchasing products on an online marketplace, customers are not informed whether a seller of a product is authorized by the manufacturer.  Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the manufacturer or, at minimum, from an authorized seller that is selling under the manufacturer's oversight and with the

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

manufacturer's approval.

34.    For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the manufacturer's quality controls.

35.    When a customer purchases a product on an online marketplace and receives a damaged, defective, or otherwise poor-quality product, the customer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

36.    Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products—online product reviews. Any consumer who is dissatisfied with the product received can post a review on the marketplace for all other consumers across the world to see. These reviews, which are often permanently fixed, will often criticize the brand rather than the marketplace seller that sold the product.

37.    Online product reviews significantly impact a brand's reputation. Survey results show that 99.75% of United States consumers read reviews "at least sometimes" when they consider buying a new product online, and 45% will not purchase a product if there are no reviews available for it. *Survey: The Ever-Growing Power of Reviews (2023 Edition)*, POWER REVIEWS, https://www.powerreviews.com/research/power-of-reviews-2023/ (last visited Jan. 18, 2024).

38.    Reviews are especially impactful on online consumers. In a brick-and-mortar store, a consumer can simply select another product from the shelf if the initial product selected appears to be compromised. However, online consumers are left simply having to hope that the product that shows up on their doorstep is of appropriate quality. Therefore, online consumers rely more on brand reputation and reviews.

39.    Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's online product listings. One study found that the impact of negative reviews went beyond the impact on a

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

consumer's immediate purchase, but also shortened the time they spent reading other reviews about the product and made them seek more information about competitors. Paulo Albuquerque and Marton Varga, *How Negative Reviews Affect Online Consumers*, KNOWLEDGE, November 9, 2023, https://knowledge.insead.edu/marketing/how-negative-reviews-affect-online-consumers#:~:text=In%20summary%2C%20a%20negative%20review,seek%20more%20information%20about%20competitors. Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy. Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further.

### TOMS Has Been the Target of Negative Online Marketplace Reviews from Customers Who Purchased Products from Unauthorized Sellers

40.    Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor-quality products and leave negative reviews on the product listing. These negative reviews injure consumer perceptions of the brand's quality and reputation, as well as its placement in search results, ultimately causing the brand to suffer damage to its goodwill and lost sales.

41.    TOMS has been a victim of the issues caused by unauthorized sellers on online marketplaces. Numerous consumers who purchased TOMS products from unauthorized sellers, like Defendants, have written negative reviews where they complained of receiving products that were damaged, defective, previously used, counterfeit, or of otherwise poor quality.

42.    For example, on July 2, 2023, Amazon user "Lisa Zambito" received used shoes and complained that the "shoes arrived in a box with the previous owner's address



Lisa Zambito
★☆☆☆☆ **USED**
Reviewed in the United States on July 2, 2023
**Verified Purchase**
These shoes arrived in a box with the previous owner's address label attached. They had obvious signs of wear and had been returned before shipping to me.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

label attached" and "had obvious signs of wear and had been returned before shipping."

43.    On May 29, 2023, Amazon user "ANOTHER CUSTOMER" posted that the product that arrived was "[f]ake," which is evidenced by the fact that "[r]eal toms soles are non removeable [sic]."



44.    On May 18, 2023, Amazon user "colin Anderson" posted that the product arrived "[u]sed and [d]irty."



45.    On May 4, 2023, Amazon user "Linda" complained that the "[s]hoes are used" as the "bottom of the shoes were dirty" and "clearly worn."

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

46.    On May 2, 2023, Amazon user "Deja S." complained that the product arrived with what looks like "mold or caked on foot powder" and "were worn already."



47.    On March 23, 2023, Amazon user "Destiny jane" complained that she received shoes that "were dirty and used" and had "dirty toe prints in the shoes, dirt on the bottoms, and even a rock stuck in the tread."



48.    On March 21, 2023, Amazon user "User" stated the product that arrived was "[n]ot authentic Toms" as indicated by the fact that the shoe did "not have the Toms' slogan, 'One for One'; had removable insole[s]; and had no arch support."

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

49.    On November 16, 2022, Amazon user "Disappointed Buyer" posted that the product that arrived was fake.



50.    On September 5, 2022, Amazon user "Jody" stated the product she received was "[n]ot Toms!!!"



51.    On December 1, 2022, Amazon user "Aspen" posted that the product arrived "[c]overed in black mold."



52.    On September 29, 2021, an Amazon user complained that they are unsure if the product is "original TOMS" based on the condition.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

53.     On August 9, 2023, Amazon user "JAYSHREE NAGRANI" posted that the product they received arrived with "a big hole in the side of the packaging."

> **JAYSHREE NAGRANI**
> ⭐☆☆☆☆ **Disappointing**
> Reviewed in the United States on August 9, 2023
> Size: 8 | Color: Black/Black Recycled Cotton Canvas | Verified Purchase
> I received this item today. Had a big hole in the side of the packaging Was horrible. Having issues getting a refund.

54.     On July 29, 2023, Amazon user "Bellini_8j8" posted that the package arrived "punctured" and "damaged" while the product was "tumbled/scuffed during shipment."



> Bellini_8j8
> ⭐☆☆☆☆ **WTF!?!? This is how I received my packaged...Outer shpmnt package punctured & Brand Shoe Box damaged.**
> Reviewed in the United States on July 29, 2023
> Size: 8 | Color: Black Metallic | Verified Purchase
> WTF?!? This is how I received my packaged...Outer Amazon shipment package (plastic bag) punctured and Brand Shoe Box damaged. Shoes tumbled/scuffed during shipment... WOW!
>
> Cute shoes & fits well. Love TOMS shoes. But shoes are scuffed and Brand box is damaged, not presentable to give as gift OR even keep for shoe storage. This is very disheartening and unacceptable to received your item like this. And Paying (a lot now) on Amazon Prime membership, only to get your package like this...this is totally uncool!

55.     On May 11, 2023, Amazon user "GG" stated that the product that arrived was the wrong color.

> GG
> ⭐☆☆☆☆ **Wrong color sent**
> Reviewed in the United States on May 11, 2023
> Size: 10.5 | Color: Black Recycled Cotton Canvas | Verified Purchase
> These look great, but I received a pair of olive green shoes instead of the black shoes I ordered. The box is even labeled "Black". Exchanging them for what I hope is a pair of Black Toms.

56.     On January 15, 2023, Amazon user "Akd" stated they "[o]nly got 1 shoe."

> Akd
> ⭐☆☆☆☆ **Only 1 shoe**
> Reviewed in the United States on January 15, 2023
> Size: 9 | Color: Navy Recycled Cotton Canvas | Verified Purchase
> Only got 1 shoe

57.     On October 24, 2022, Amazon user "Ashley" posted that she received the wrong product.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

58.     The foregoing reviews are only a small sample of the negative reviews of TOMS products that have been posted on the Amazon platform.

59.     Amazon does not allow product reviews to identify the seller that sold the product that is the subject of the product review.  Given that Defendants are selling a high volume of products bearing the TOMS Trademarks on Amazon and are not subject to TOMS' quality controls, however, it is likely that some of the foregoing negative reviews—and the many similar reviews of TOMS products that appear on the Amazon website—were written by customers who purchased products bearing the TOMS Trademarks from Defendants.

**TOMS Has Implemented Quality Controls throughout Its Authorized Channels of Distribution to Combat the Problems Presented by Online Marketplaces, Protect the Value of the TOMS Trademarks, and Ensure Customers Receive the Genuine, High-Quality Products They Expect from TOMS**

60.     The above reviews show how sales of poor-quality TOMS products disappoint TOMS' consumers and cause significant harm to the reputation and goodwill of TOMS and its brand.  To protect itself and consumers from these harms, TOMS implemented a quality control program that applies to all of its Authorized Sellers, including sellers that sell in a brick-and-mortar retail setting and sellers that sell online.

61.     TOMS' distribution controls are a quality control measure intended to minimize the risk and reputational damage caused by the illegal sale of poor-quality products bearing the TOMS Trademarks by unauthorized sellers like Defendants who

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

do not abide by TOMS' quality controls.  The goal of TOMS' quality control program is to ensure that consumers who buy TOMS products, including ones buying online, receive the high-quality products and services that they expect with the TOMS name. By preventing consumers from receiving poor-quality products, the program both protects consumers from confusion and also protects the value and goodwill associated with the TOMS brand.

62.    TOMS abides by its quality control requirements and requires its Authorized Sellers to abide by them as well.

63.    TOMS' ability to exercise its quality controls is essential to the integrity and quality of TOMS products, as well as the value of the TOMS Trademarks and other intellectual property.

64.    TOMS' quality controls begin with requiring that all outside sales of its products take place through TOMS' own website or through Authorized Sellers.  This basic step ensures that everyone who is selling TOMS products is ultimately subject to TOMS' quality control requirements.

65.    The TOMS Rules limit to whom and where Authorized Sellers may sell TOMS products.  To prevent persons outside of TOMS' quality controls from acquiring and reselling TOMS products, the TOMS Rules prohibit Authorized Sellers from selling TOMS products to any third party who is not an Authorized Seller and who intends to resell the products.  Authorized Sellers are permitted to sell TOMS products only to end-user consumers or, in certain circumstances, to other Authorized Sellers.

66.    Authorized Sellers are also prohibited from selling TOMS products online unless they first obtain written consent from TOMS.

67.    These restrictions are essential to TOMS' ability to exercise its quality controls over TOMS products because they prevent unauthorized sellers from obtaining and reselling TOMS Products and allow TOMS to know where all of its products are being sold online by Authorized Sellers.  If a quality issue arises through an online sale, TOMS can identify the Authorized Seller that made the sale, contact the Authorized

Seller, and address the issue immediately.  TOMS is unable to take such action against unauthorized sellers because it does not know who those sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

68.     In addition to restricting where and how Authorized Sellers can sell TOMS Products, the TOMS Rules also require Authorized Sellers to follow numerous quality control requirements related to the inspection, handling, and storage of TOMS products.

69.     To ensure that customers receive the genuine and high-quality products they expect from TOMS, the TOMS Rules require Authorized Sellers to inspect all TOMS products for any damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory.  Authorized Sellers are prohibited from selling damaged or defective products.  Further, to assist TOMS in identifying any product quality issues, Authorized Sellers are required to report any defects to TOMS.

70.     The TOMS Rules also require that Authorized Sellers store TOMS products in accordance with guidelines issued by TOMS.  This requirement helps ensure that TOMS products are stored properly and are not damaged prior to being shipped to the consumer.

71.     To avoid consumer confusion and ensure that customers receive genuine TOMS products, Authorized Sellers must sell TOMS products in their original packaging and are prohibited from relabeling, repackaging, or altering TOMS products or any accompanying label, literature, or safety-related information, unless instructed by TOMS.

72.     Authorized Sellers are also prohibited from tampering with, defacing, or otherwise altering any identifying information on TOMS products, including any serial number, UPC code, or other identifying information.

73.     The TOMS Rules give TOMS the right to monitor and audit Authorized Sellers by inspecting their facilities and records relating to TOMS Products, to ensure

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

their compliance with TOMS' quality control requirements. Authorized Sellers also must cooperate with TOMS with respect to any product recall or other consumer safety information dissemination effort conducted by TOMS regarding TOMS products.

74. The TOMS Rules also require Authorized Sellers to provide various customer services to their customers.

75. For example, Authorized Sellers must familiarize themselves with the features of all TOMS products kept in their inventory so that they can advise customers on the selection and safe use of TOMS products. Following the sale of genuine TOMS products, Authorized Sellers must provide ongoing support to consumers and prompt replies to their inquiries.

76. TOMS' quality control and customer service requirements are legitimate and substantial and have been implemented so that TOMS can control the quality of goods manufactured and sold under the TOMS Trademarks, to protect consumers as well as the value and goodwill associated with the TOMS Trademarks.

77. TOMS' quality control and customer service requirements are also material, as they are designed to protect consumers and prevent them from receiving poor-quality products. Consumers would find it material and relevant to their purchasing decision to know whether a TOMS product that they were considering buying was being sold by an Authorized Seller who is subject to TOMS' quality control and customer service requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, TOMS' quality controls and over whom TOMS is unable to exercise its quality controls.

**Given the Flood of Poor Quality Products Being Sold Online and Consumers' Inability to Inspect Such Products before Purchase, TOMS Imposes Additional Requirements on Its Authorized Sellers Who Sell Online**

78. As shown in consumer reviews cited above (¶¶42-57), TOMS products sold online are more susceptible to quality and authenticity problems as consumers cannot see the product before they buy it. These problems are especially severe on

online marketplaces such as Amazon, where sellers can conceal the fact that they are an unauthorized seller and many sellers may share a single product listing page.

79.    Given these heightened risks to consumer satisfaction and the value of its trademarks that are posed by online sellers, TOMS imposes additional quality control requirements on all of its Authorized Sellers who sell TOMS products online.

80.    If an Authorized Seller is approved to sell online (thus becoming an "Authorized Online Seller"), the Authorized Online Seller may sell TOMS products online only if it complies with additional quality control requirements.

81.    The TOMS Rules allow Authorized Online Sellers to sell TOMS products only through "Permissible Websites" and "Authorized Websites." These rules allow TOMS to oversee all Authorized Online Sellers who sell TOMS products online.

82.    A "Permissible Website" is a website that: (1) is operated by an Authorized Online Seller in the Authorized Online Seller's own legal name or registered fictitious name; and (2) lists the Authorized Online Seller's mailing address, telephone number, and email address. Permissible Websites do not include storefronts on any online marketplaces.

83.    Authorized Online Sellers must receive prior written approval from TOMS before they can sell TOMS products on any other website. To obtain this approval, Authorized Online Sellers must submit applications and undergo substantial vetting by TOMS that includes review of an applicant's business operating record and online review history. A website that TOMS permits an Authorized Online Seller to use through this process is called an "Authorized Website."

84.    The TOMS Rules impose numerous additional requirements on Authorized Online Sellers who sell TOMS products on Permissible Websites or Authorized Websites.

85.    For example, Authorized Online Sellers must use images of TOMS products provided or approved by TOMS and keep product descriptions up to date. Authorized Online Sellers are also prohibited from advertising any TOMS product they

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

do not carry in inventory.

86.    The TOMS Rules prohibit Authorized Online Sellers from selling anonymously and instead require them to state their business name and current contact information on all websites where they sell, while not giving any appearance that the website is operated by TOMS or another third party.  These requirements allow consumers of TOMS products to understand the nature of the seller from whom they are purchasing and contact the seller if any quality issues arise.  These requirements also allow TOMS to protect the public from the sale of poor-quality TOMS products because it allows for easy detection of an Authorized Online Seller that sells poor-quality goods.

87.    At TOMS' request, Authorized Online Sellers must provide access to and copies of all web pages that make up any Permissible Website or Authorized Website where Authorized Online Resellers are selling TOMS products.

88.    Authorized Online Sellers are prohibited from representing or advertising any TOMS product as "new" that has been returned, repackaged, or otherwise been altered by a customer.  When customers return products that were purchased online, many websites and online marketplaces will, by default, repackage the products and allow them to be relisted as "new."  The TOMS Rules prohibit Authorized Online Sellers from allowing or carrying out this practice to ensure that customers receive the high-quality TOMS products they expect when they purchase "new" products.

89.    If Authorized Online Sellers use any third-party fulfillment service to store inventory or fulfill orders for TOMS products, they must ensure that the fulfillment service provider is aware of and complies with all product quality controls and customer services standards required by the TOMS Rules.  Authorized Online Sellers are also prohibited from using any fulfillment or storage service that could cause or allow customers to receive TOMS products from other sellers' product stock when they purchase from Authorized Online Sellers.  These requirements ensure that the specific products that the Authorized Online Seller has that meet TOMS' quality standards will

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

be those that are shipped to the customer in fulfillment of an order, rather than other products that are outside of TOMS' quality controls.

90.    All websites through which Authorized Online Sellers sell TOMS products must comply with all applicable data security, accessibility, and privacy requirements.

91.    All websites where Authorized Online Sellers sell TOMS products must have a mechanism for receiving customer feedback, and Authorized Online Sellers must take appropriate steps to address any feedback received.  Authorized Online Sellers must also: (i) keep copies of all information related to customer feedback regarding Authorized Online Sellers' products and their responses; (ii) provide this information to TOMS upon request; and (iii) cooperate with TOMS in investigating negative online reviews related to sales of TOMS products.

92.    The additional quality control requirements that TOMS imposes on its Authorized Online Sellers are legitimate and substantial and have been implemented to allow TOMS to carefully control the quality of TOMS products that are sold online and quickly address any quality issues that arise.

93.    TOMS' additional quality controls are also material, as they have been implemented to ensure that consumers purchasing TOMS products online receive genuine, high-quality TOMS products that abide by TOMS' quality controls. Consumers purchasing TOMS products online would find it relevant to their purchasing decision to know whether the product they are buying is vended by an Authorized Online Seller who is subject to, and abides by, TOMS' quality controls.

### TOMS Monitors and Audits Its Authorized Online Sellers to Ensure They Comply with Its Quality Control Requirements

94.    TOMS regularly audits its Authorized Online Sellers and monitors Permissible Websites and Authorized Websites to ensure that Authorized Online Sellers are adhering to TOMS' quality control requirements.  TOMS carries out its auditing and monitoring actions pursuant to an internal program called the TOMS

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

Shoes, LLC Online Quality Control Program ("Auditing Program").

95.    As part of its Auditing Program, TOMS examines a rotating sample of Authorized Websites and Permissible Websites each month to ensure that the Authorized Online Sellers who sell through the websites are complying with the TOMS Rules.  During these examinations, TOMS checks to make sure that, among other requirements, Permissible Websites and Authorized Websites: (i) clearly state an Authorized Online Seller's legal name or registered fictitious business name and provide contact information for the Authorized Online Seller; (ii) do not give the appearance that they are operated by TOMS or a third party; (iii) do not display any content that could be detrimental to the TOMS brand; (iv) do not make any representations regarding TOMS products that are misleading; (v) exclusively contain images of TOMS products and product descriptions that are supplied or authorized by TOMS and up-to-date; and (vi) have a mechanism through which customers can provide feedback.

96.    TOMS also periodically inspects online reviews of TOMS products and Authorized Online Sellers that appear on Permissible Websites and Authorized Websites.  If TOMS discovers reviews asserting that Authorized Online Sellers provided poor customer service, sold poor-quality TOMS products, or otherwise did not adhere to the quality control and customer service requirements that all Authorized Sellers are required to follow, TOMS communicates with the responsible Authorized Online Sellers to determine the cause(s) of the negative reviews, take any necessary corrective action, and secure the removal of negative reviews if possible.

97.    Each month, TOMS also conducts a test purchase of a TOMS product from a rotating sample of Permissible Websites and Authorized Websites.  If TOMS discovers any quality problems in purchased products or discovers that an Authorized Online Seller is otherwise not following the quality control requirements that Authorized Online Sellers must follow when selling on Permissible Websites and Authorized Websites—for example, by altering product packaging or fulfilling product

orders in a way that allows customers to receive TOMS products from other sellers' product stock—TOMS communicates with the responsible Authorized Online Seller and takes any necessary corrective action.

98.    Through its Auditing Program, TOMS may visit the facilities of its Authorized Online Sellers to confirm that all of its quality control requirements are being followed and that Authorized Online Sellers are not selling any counterfeit, used, or otherwise poor quality TOMS products.

99.    If TOMS discovers that an Authorized Online Seller is selling TOMS products of poor-quality or otherwise not adhering to TOMS' quality control or customer service requirements, TOMS conducts an investigation to determine the source of the problem.  The TOMS Rules require that Authorized Online Sellers cooperate with TOMS' investigation, permit TOMS to inspect their facilities and records relating to TOMS products, and disclose all information about where they obtained TOMS products.  Based on what its investigation reveals, TOMS has the right to cease selling its products to an Authorized Online Seller and to suspend or terminate its status as an Authorized Seller of TOMS products.

**Genuine TOMS Products Come with TOMS' Satisfaction Guarantee;**

**Defendants' Products Do Not**

100.    TOMS products purchased from TOMS or TOMS' Authorized Sellers come with the TOMS Satisfaction Guarantee (the "TOMS Guarantee").

101.    The TOMS Guarantee provides that customers who are dissatisfied with a TOMS product may request a refund or credit within 45 days of the date of purchase if the customer provides proof of purchase from a TOMS Authorized Seller.  The complete TOMS Guarantee statement can be viewed on the TOMS website—see https://www.toms.com/us/faq.html—and is incorporated herein.

102.    As discussed above, TOMS cannot ensure the quality of the products sold by unauthorized sellers, like Defendants, who are not subject to TOMS' quality controls.  For this reason, the TOMS Guarantee does not cover TOMS products sold by

unauthorized sellers, like Defendants, who do not comply with TOMS' quality controls and standards.  Indeed, the TOMS Guarantee specifically states: "Please note that we are unable to control the quality of TOMS products sold by unauthorized sellers Therefore unless otherwise prohibited by law, the Guarantee is not available for products purchased from unauthorized sellers, including unauthorized internet sites."

103.  The TOMS Guarantee is a material component of genuine TOMS products.  Consumers who purchase TOMS products with the TOMS Guarantee receive the peace of mind that they are receiving a good quality product, that TOMS stands behind the product, and that if for any reason they are not satisfied with a TOMS product, they will have the ability to request a refund or credit.

104.  Consumers would find it material and relevant to their purchasing decision to know whether a TOMS product they were considering buying was covered by the TOMS Guarantee.  If a consumer knew a product did not come with the TOMS Guarantee, the consumer would be less likely to purchase the product.

**Defendants Are Not Authorized Sellers and Are Illegally Selling Non-Genuine Products Bearing the TOMS Trademarks**

105.  Due to the risks to consumers and the reputational concerns associated with the illegal sale of products bearing the TOMS Trademarks by unauthorized Internet sellers, TOMS actively monitors the sale of its products online.

106.  In the course of this monitoring, TOMS discovered products bearing the TOMS Trademarks being illegally sold by Defendants through the Unauthorized Storefront.

107.  After TOMS discovered products bearing the TOMS Trademarks being illegally sold on the Unauthorized Storefront, TOMS investigated the storefront to determine who was operating the storefront.

108.  In July of 2023, counsel for TOMS sent a cease-and-desist letter to G.B. Beach Concepts, Inc., demanding that they immediately cease selling products bearing the TOMS Trademarks.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

109.   This letter further notified Defendants that they were injuring TOMS in California through their illegal actions and that they would be subject to personal jurisdiction in California if they continued to engage in their conduct.

110.   This letter also notified Defendants that TOMS has contracts with its Authorized Sellers that prohibit Authorized Sellers from selling TOMS products to unauthorized resellers, and that Defendants will be liable for tortiously interfering with those contracts if they continue to purchase products bearing TOMS' Trademarks from Authorized Sellers for the purpose of reselling them.

111.   Defendants did not respond to this letter and continued to sell products bearing the TOMS Trademarks on the Amazon storefront.

112.   Counsel for TOMS sent a second round of cease-and-desist letters to Defendants in August, 2023.  Defendants did not respond to those letters either.

113.   As of the time of filing, Defendants have not responded to any of TOMS' letters and continue to advertise and sell products bearing the TOMS Trademarks through the Amazon storefront.

114.   Through their highly interactive Amazon storefront, Defendants have sold products bearing the TOMS Trademarks to residents of California through the regular course of business.

115.   Defendants' disregard of TOMS' cease-and-desist letters and continued sale of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

**Defendants Are Not Subject to, Do Not Abide by, and Interfere with**

**TOMS' Quality Control Requirements**

116.   Defendants are not Authorized Sellers of TOMS products, and do not abide by TOMS' quality control and customer service requirements that TOMS requires Authorized Sellers to follow.

117.   Defendants directly violate TOMS' quality controls, among many other ways, by failing to completely and accurately identify themselves on their online

storefront.  Defendants do not publicly display their real business address or email address on their Amazon storefront.

118.  Defendants also do not comply with TOMS' quality controls—and interfere with TOMS' quality controls—because they have not given TOMS the right to audit and inspect Defendants' facilities and practices.  Therefore, among other things, TOMS cannot know if Defendants are: (i) sourcing products only from authorized sources; (ii) properly inspecting and storing products, and not selling poor-quality products; (iii) selling products only in official and unaltered TOMS packaging; (iv) refusing to allow products that have been returned or repackaged to be listed for sale as "new" products; (v) not permitting their products to be commingled with products owned by other sellers, such that a customer could receive a product owned by another seller when purchasing from Defendants; and (vi) providing exceptional customer service and responding appropriately to feedback received from customers.

119.  Defendants' failure to abide by the TOMS Rules prevents TOMS from exercising control over the quality of products Defendants sell bearing the TOMS Trademarks.  Unlike with its Authorized Online Sellers, TOMS cannot monitor or audit Defendants to ensure they are complying with its quality controls or take any action to correct quality problems it discovers or is alerted to in products sold by Defendants.

120.  Because the products Defendants sell bearing the TOMS Trademarks are not subject to, do not abide by, and interfere with TOMS' quality control and customer service requirements, they are not genuine TOMS products.

### Defendants Are Infringing the TOMS Trademarks by Selling Products Bearing the TOMS Trademarks that Do Not Come with the TOMS Guarantee

121.  As set forth above, genuine TOMS products purchased from TOMS or Authorized Sellers who comply with TOMS' quality controls come with the TOMS Guarantee.

122.  Because Defendants are not Authorized Sellers of TOMS products and do

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

not comply with TOMS' quality controls, the products they sell bearing the TOMS Trademarks do not come with the TOMS Guarantee.

123. Because the products Defendants sell do not come with the TOMS Guarantee, they are materially different from genuine TOMS products. The TOMS Guarantee is a material part of what consumers expect when they purchase TOMS products.

124. Defendants' unauthorized sale of non-genuine products bearing the TOMS Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine TOMS products that come with the TOMS Guarantee when, in fact, they are not.

**Defendants Are Tortiously Interfering with**

**TOMS' Agreements with Its Authorized Sellers**

125. Upon information and belief, Defendants have purchased TOMS products from TOMS Authorized Sellers for purposes of unlawfully infringing upon and materially damaging the value of the TOMS Trademarks by reselling the products on the Internet outside of TOMS' quality controls.

126. TOMS' agreements with its Authorized Sellers prohibit Authorized Sellers from selling TOMS products to third parties, like Defendants, who are not Authorized Sellers and who intend to resell the products.

127. Defendants have known of this prohibition since, at the latest, approximately July, 2023. In that month, TOMS mailed cease-and-desist letters to all Defendants explaining that TOMS has agreements with all of its Authorized Sellers that prohibit them from selling TOMS products to any person or entity that is not an Authorized Seller and intends to resell the products.

128. TOMS' letters also informed Defendants that, by purchasing TOMS products from an Authorized Seller for the purpose of reselling them, they were causing a breach of the agreement between TOMS and its Authorized Seller and were interfering with TOMS' agreements and business relationships.

129.   TOMS' July and August, 2023 letters also advised Defendants that if they continued to acquire products from TOMS' Authorized Sellers and then resold the products, they would be liable for tortiously interfering with TOMS' contracts and business relationships with its Authorized Sellers.

130.   Despite being provided this information, upon information and belief, Defendants have continued to acquire TOMS products from TOMS' Authorized Sellers and resell the products.

131.   Upon information and belief, Defendants do not disclose to Authorized Sellers that they intend to resell the products they purchase from Authorized Sellers.

132.   Upon information and belief, Defendants willfully and knowingly induced, and are continuing to induce, unknown Authorized Sellers to breach their agreements with TOMS so that they can acquire TOMS products and unlawfully infringe upon the TOMS Trademarks by reselling the products.

### The Individual Defendant Is Liable

133.   TOMS asserts claims against Defendant Jerry Foerch in his individual capacity as well as his capacity as a corporate officer of G.B. Beach Concepts, Inc.

134.   Upon information and belief, Foerch authorizes, directs, or otherwise personally participates in the sale of infringing products bearing the TOMS Trademarks by Beach Concepts.  These are affirmative actions beyond merely holding an ownership interest in Beach Concepts.  Accordingly, Foerch is personally liable for the infringing activities of Beach Concepts without regard to piercing the corporate veil.

135.   Alternatively, there is such unity of interest and ownership that the separate personalities of Beach Concepts and Foerch no longer exist.  This is supported by the fact that Beach Concept's principal, mailing, and street address, per filings with the Florida Secretary of State, is a residential address that investigation identified as Foerch's residence.  Furthermore, Foerch is listed as Beach Concept's President and agent.  Beach Concepts appears to have no officers other than Foerch.  If the infringing acts in this case were treated as Beach Concept's alone, an inequitable result would

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

follow.  Accordingly, TOMS is entitled to pierce the corporate veil and hold Foerch personally liable for the infringing activities of G.B. Beach Concepts, Inc.

## TOMS Has Suffered Substantial Harm as a
## Result of Defendants' Conduct

136.  As set forth above, the unauthorized sale of products bearing the TOMS Trademarks through unauthorized sellers such as Defendants has caused significant harm to the TOMS brand.

137.  When a consumer receives a non-genuine, damaged, or poor-quality product from an unauthorized seller, such as Defendants, the consumer associates that negative experience with TOMS.  As such, Defendants' ongoing sale of non-genuine products bearing the TOMS Trademarks harms the TOMS brand.

138.  TOMS has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

139.  TOMS has suffered, and will continue to suffer, irreparable harm as a result of Defendants' actions, including, but not limited to, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

140.  TOMS is entitled to injunctive relief because, unless enjoined by this Court, Defendants will continue to unlawfully sell non-genuine products bearing the TOMS Trademarks, causing continued irreparable harm to TOMS' reputation, goodwill, relationships, intellectual property, and brand integrity.

141.  Furthermore, Defendants' conduct was and is knowing, reckless, intentional, willful, malicious, wanton, and contrary to law.

142.  Defendants' disregard of communications from TOMS and continuation of selling of non-genuine products despite being informed of their unlawful conduct demonstrates that they are acting intentionally, willfully, and maliciously.

143.  Defendants' willful violations of the TOMS Trademarks and continued

pattern of misconduct demonstrate intent to harm TOMS.

## **FIRST CAUSE OF ACTION**

### **Trademark Infringement**

### **15 U.S.C. §§1114 and 1125(a)(1)(A)**

### **(Against All Defendants)**

144.   TOMS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

145.   TOMS is the owner of the TOMS Trademarks.

146.   TOMS has registered the TOMS Trademarks with the United States Patent and Trademark Office.

147.   The TOMS Trademarks are valid and subsisting trademarks in full force and effect.

148.   Defendants willfully and knowingly used, and continue to use, the TOMS Trademarks in interstate commerce for purposes of selling non-genuine products bearing the TOMS Trademarks on the Internet without TOMS' consent.

149.   The products Defendants sell bearing the TOMS Trademarks are not authorized for sale by TOMS.

150.   The products Defendants sell bearing the TOMS Trademarks are materially different from genuine TOMS products because they are not subject to, do not abide by, and interfere with the legitimate and substantial quality controls that TOMS has established.

151.   The products Defendants sell bearing the TOMS Trademarks are also materially different from genuine TOMS products because they do not come with the TOMS Guarantee, which accompanies genuine TOMS products.

152.   Defendants' unauthorized sale of materially different products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine TOMS products when they are not.

153.   Defendants' unauthorized sale of materially different products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with TOMS when, in fact, they are not.

154.   Defendants' unauthorized use of the TOMS Trademarks has infringed upon and materially damaged the value of the TOMS Trademarks and caused significant damage to TOMS' business relationships.

155.   As a proximate result of Defendants' actions, TOMS has suffered, and will continue to suffer, immediate and irreparable harm.  TOMS has also suffered, and continues to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

156.   TOMS is entitled to recover its damages caused by Defendants' infringement of the TOMS Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

157.   TOMS is entitled to injunctive relief under 15 U.S.C. §1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, TOMS will suffer irreparable harm.

158.   TOMS is entitled to enhanced damages and attorneys' fees under 15 U.S.C. §1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the TOMS Trademarks.

## **SECOND CAUSE OF ACTION**

### **Unfair Competition - 15 U.S.C. § 1125(a)**

### **(Against All Defendants)**

159.   TOMS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

160.   As set forth above, Defendants are selling non-genuine products bearing the TOMS Trademarks that are materially different from genuine TOMS products.

161.   Defendants' sale of non-genuine products bearing the TOMS Trademarks

is likely to cause consumer confusion and lead consumers to believe that those products are affiliated with, connected with, associated with, sponsored by, or approved by TOMS when they are not.

162.   Defendants' conduct constitutes unfair competition under the Lanham Act, 15 U.S.C. §1125(a).

163.   TOMS is entitled to injunctive relief under 15 U.S.C. §1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, TOMS will suffer irreparable harm.

164.   TOMS is entitled to enhanced damages and attorneys' fees under 15 U.S.C. §1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the TOMS Trademarks.

## THIRD CAUSE OF ACTION

### Unfair and Deceptive Business Practices

### Cal. Bus. & Prof. Code §§ 17200, et seq.

### (Against All Defendants)

165.   TOMS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

166.   Defendants willfully and knowingly used, and continue to use, the TOMS Trademarks in interstate commerce for the purpose of advertising, marketing, and selling products bearing the TOMS Trademarks without the consent of TOMS.

167.   The products Defendants sell are not genuine TOMS products because the products are not authorized for sale by TOMS, are not subject to TOMS' quality controls, and are materially different from genuine TOMS products.

168.   Defendants' unauthorized sale of products bearing the TOMS Trademarks interferes with TOMS' ability to exercise quality control over products bearing the TOMS Trademarks because TOMS is unable to audit Defendants to confirm it is complying with TOMS' quality control requirements and/or close Defendants' account if they fail to comply with TOMS' quality control requirements.

169.   The products Defendants sell are materially different from genuine TOMS products because they are not subject to, and interfere with, TOMS' quality controls.

170.   The products Defendants sell are materially different from genuine TOMS products because they do not come with the TOMS Guarantee or customer service benefits that accompany genuine TOMS products.

171.   Defendants' use of the TOMS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the TOMS Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products are subject to TOMS quality control requirements when they are not.

172.   Defendants' use of the TOMS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the TOMS Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products come with the TOMS Guarantee and customer service benefits that accompany genuine TOMS products when they do not.

173.   Defendants' use of the TOMS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic TOMS products when they are not.

174.   Defendants' use of the TOMS Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with TOMS when they are not.

175.   Defendants' unauthorized and deceptive use of the TOMS Trademarks is material and likely to influence customers to purchase the products it sells, as customers

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

are likely to believe that the products Defendants advertise using the TOMS Trademarks are genuine TOMS products that are subject to TOMS' quality controls and come with the TOMS Guarantee when they do not.

176. Defendants' actions constitute unfair, deceptive, untrue, and/or misleading advertising in violation of Cal. Bus. & Prof. Code §§17200 *et seq.*

177. Defendants have also knowingly and willfully obtained TOMS products through unlawful means and in violation of TOMS' agreements with its Authorized Retailers. Specifically, Defendants have continued to acquire TOMS products through TOMS' Authorized Sellers for purposes of reselling those products on the Internet despite knowing that TOMS' agreements with its Authorized Sellers prohibit them from selling products to third parties for purposes of resale.

178. Defendants' actions constitute unlawful, unfair, and/or fraudulent business acts or practices in violation of violate Cal. Bus. & Prof. Code §§17200 *et seq.*

179. As a result of Defendants' unlawful actions, TOMS has suffered, and continues to suffer, irreparable harm. TOMS has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

180. TOMS is entitled to injunctive relief under Cal. Bus. & Prof. Code §17203 because it has no adequate remedy at law for Defendants' infringement and, unless Defendants are permanently enjoined, TOMS will suffer irreparable harm.

## **FOURTH CAUSE OF ACTION**

### **Common Law Unfair Competition**

### **(Against All Defendants)**

181. TOMS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

182. Defendants' unauthorized advertisement and sale of non-genuine products bearing the TOMS Trademarks interferes with TOMS' quality controls and its ability to exercise quality control over products bearing the TOMS Trademarks.

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

183.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the TOMS Trademarks suggests that the products Defendants offer for sale are covered by the TOMS Guarantee and are subject to, and abide by, TOMS' quality controls when, in fact, they are not.

184.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the TOMS Trademarks suggests that the products Defendants offer for sale are genuine TOMS products when, in fact, they are not.

185.   Defendants' unauthorized advertisement and sale of non-genuine products bearing the TOMS Trademarks is likely to cause confusion, cause mistake, or deceive consumers because Defendants' use of the TOMS Trademarks suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with TOMS when, in fact, they are not.

186.   Defendants' unlawful actions constitute active misrepresentation as to the source of the products they sell.  These false representations tend to confuse customers and induce them to believe that Defendants' products are genuine TOMS products when, in fact, they are not.

187.   Defendants' unauthorized sale of products bearing the TOMS Trademarks and unauthorized use of the TOMS Trademarks in advertising infringes the TOMS Trademarks and constitutes unfair competition at common law.

188.   Defendants' unauthorized use of the TOMS Trademarks has materially damaged the value of the TOMS Trademarks, caused significant damage to TOMS' business relations, and infringed the TOMS Trademarks.

189.   As a result, TOMS has suffered, and continues to suffer, immediate and irreparable harm.  TOMS has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

proven at trial.

190.   TOMS is also entitled to punitive damages because Defendants acted with actual malice accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by their acts and omissions.

## FIFTH CAUSE OF ACTION

### Intentional Interference with Contractual Relations

### (Against All Defendants)

191.   TOMS hereby incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

192.   TOMS has contracts with its Authorized Sellers who sell TOMS products (the "Contracts").   The Contracts prohibit Authorized Sellers from selling TOMS products to third parties, such as Defendants, who are not Authorized Sellers and who intend to resell the products.

193.   Defendants know and, at all relevant times described herein, know of TOMS Contracts with its Authorized Sellers who sell TOMS products.

194.   Defendants are not Authorized Sellers of TOMS products.

195.   Defendants have sold—and continue to sell—a high volume of products bearing the TOMS Trademarks through their Amazon storefront.

196.   Based on these facts, it is plausible and a reasonable inference that Defendants acquired the products they are reselling from one or more of TOMS' Authorized Sellers.

197.   Defendants purchased products from Authorized Sellers for the purpose of reselling them on the Internet, which prevented performance of at least one or more of the Contracts and/or made performance of the Contracts for TOMS more expensive or difficult.

198.   Defendants have known since (at the latest) receiving TOMS' July 11, 2023 cease-and-desist letter that TOMS has agreements with all of its Authorized Sellers that prohibit them from selling to non-Authorized Sellers who intend to resell

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

products, and that Defendants would tortiously interfere with those agreements if they continued to acquire products from Authorized Sellers for resale.

199.    Defendants, without legal right, privilege, or justification, intended to disrupt the performance of one or more of the Contracts, or knew that disruption of one or more of the Contracts was certain or substantially certain to occur as a result of their conduct.

200.    Defendants' actions have caused or were a substantial factor in causing TOMS to suffer, and continue to suffer, substantial harm, including loss of sales and damage to TOMS' existing and potential business relations with one or more of TOMS' authorized Sellers, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, TOMS prays for relief and judgment as follows:

A.    Judgment in favor of TOMS and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, liquidated damages, restitution, including disgorgement of profits, and pre-judgment and post-judgment interest, as permitted by law;

B.    Preliminary and permanent injunctions enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all products bearing the TOMS Trademarks;

ii)    Prohibiting the Enjoined Parties from using any of the TOMS Trademarks in any manner, including advertising on the Internet;

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

products bearing any of the TOMS Trademarks;

iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the TOMS Trademarks including invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks;

v)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any of TOMS' products, or any of the TOMS Trademarks;

vi)    Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo, and Bing), to remove from the Internet any of the TOMS Trademarks which associate TOMS' products or the TOMS Trademarks with the Enjoined Parties or the Enjoined Parties' websites;

vii)    Requiring the Enjoined Parties to take all action to remove the TOMS Trademarks from the Internet, including, but not limited to, third-party marketplace websites such as www.amazon.com, www.walmart.com, www.ebay.com, and www.target.com; and

viii)    Requiring the Enjoined Parties to take all action to remove, or cause to be removed, any customer reviews of products bearing TOMS' trademarks that were sold by Defendants on third-party marketplace websites including, but not limited to, www.amazon.com and www.ebay.com.

C.    An award of attorneys' fees, costs, and expenses;

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS

D.   Such other and further relief as the Court deems just, equitable, and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, TOMS demands a trial by jury on all issues so triable.

Dated:  September 24, 2024          Respectfully submitted,

CONNOLLY FINKEL & GOSSELIN LLP


By:_____
     John G. Connolly
     *Attorneys for Plaintiff*
     *TOMS SHOES, LLC*

COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF
15 U.S.C. § 1114, 15 U.S.C. § 1125(a), AND RELATED CLAIMS